**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 1:06-CR-231 |
| ) | |
| v. ) | Sentencing Date: December 12, 2006 |
| ) | |
| TARUN MAKKAR, ) | Honorable Richard J. Leon |
| ) | |
| Defendant ) | |

**MEMORANDUM IN AID OF SENTENCING**

    Tarun Makkar, by and through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing setting forth all factors the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). For the reasons that follow, Mr. Makkar respectfully requests that the Court sentence him to 18 months of incarceration and allow him to return to India immediately thereafter. As grounds for this request, Mr. Makkar states as follows:

    **I.**    **Introduction**

    Tarun Makkar stands before the Court having entered a plea of guilty to one count of Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). He brings with him an immeasurable amount of remorse, sorrow, humiliation and despair for his conduct in this case. To those that know Mr. Makkar, it is inconceivable that he would stand accused of a crime of this nature. Indeed, when the Court reads the 17 letters of support and a report from a clinical psychologist that we have submitted with this memorandum, it is clear that his conduct in this case is inconsistent and inapposite to the type of person that Mr. Makkar truly

is. (Attachments A & B) Nevertheless, Mr. Makkar's actions in this case are inexcusable and unjustifiable. In pleading guilty, Mr. Makkar has taken full responsibility for his actions and offers his sincere apology to the Court, his family, friends, and the community.

### II.     Personal Background of Mr. Makkar

#### A.     Upbringing

Tarun Makkar was born in Haryana, India on July 27, 1974 to a middle class family. His father was in the Indian government and his mother remained at home. Although his family was of modest means, Mr. Makkar's parents encouraged him to do well in school and be respectful of others. Mr. Makkar's parents provided him with a stable home, proper guidance, direction, and core values.

Tragically, Mr. Makkar's father passed away in 1995, at which time, Mr. Makkar assumed the role as head of his family. As a result, he has taken full responsibility for assisting his elderly mother, who suffers from serious blood clots on the brain, seizures, headaches, and other diabetes-related illnesses. He is an important source of financial and emotional support for his mother, as well as for her medical care.

#### B.     Educational Background and Work History

Mr. Makkar attended Shri Guru Ram Rai Institute of Technology in India and obtained his Master's Degree in Computer Science in 1999. Mr. Makkar obtained his Bachelor's Degree in Computer Science from Grukul Kanri University in India in 1996. In 1999, Mr. Makkar began working for Flextronics Software Systems, Ltd. During his employment with Flextronics, Mr. Makkar was continuously promoted and reached the level of Team Leader. He was a hard worker and well-liked by his coworkers.

#### C.     Family Life

In 2000, Mr. Makkar married Rachna Makkar through an arranged marriage. In 2001, the Mrs. Makkar gave birth to the couple's daughter, Ishita. Mr. Makkar is the sole provider for his wife, his five year-old daughter, and his aging mother.

We respectfully submit that the consequences of this conviction have already caused significant and irreparable harm to Mr. Makkar's family back in India. First, Mr. Makkar is the sole provider for his wife, his five year-old daughter, and his live-in mother. They have been without resources and have been depending on others in the community for support.

Second, Mr. Makkar's daughter, who depends on him greatly, does not comprehend his absence from the home. The six-month separation has been the longest time Ishita has spent away from her father. She has even written a letter that says, "I love you Papa. Please come back this Christmas."

Third, Mr. Makkar's wife has been devastated by the conduct. She has had a difficult time dealing with her husband's actions, and it has nearly destroyed their relationship. Since his incarceration, she has had trouble eating and sleeping. She spends most of her time worrying about how she and her daughter will survive without assistance from her husband. Despite all of the emotional and financial damage that she has suffered, Mrs. Makkar has found it in her heart to forgive her husband, and she is committed to assisting Mr. Makkar through this difficult period of their lives. She realizes that the conduct at issue here was an aberration that will never be repeated again.

### III.    Application of the Statutory Sentencing Factors to the Facts of this Case

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S.Ct. 738, 756

(2005). In sum, in every case, a sentencing court must now consider all of the factors set forth in 18 U.S.C. § 3553(a), not just the advisory guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. We would respectfully ask the Court, after consideration of the factors set forth in 18 U.S.C. § 3553(a), as well as the additional information concerning Mr. Makkar's psychological background, to sentence Mr. Makkar to a period of 18 months. In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

> **A.    The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

**1.    Nature and Circumstances of the Offense**

The crux of the case is that on June 14, 2006, Mr. Makkar traveled from Gaithersburg, Maryland to Washington, D.C. to meet who he thought was a 13 year-old girl to engage in illicit sexual conduct. Mr. Makkar met the 13 year-old, who in actuality was a District of Columbia Metropolitan Police Department ("MPD") detective, in an Internet chat room. After chatting back and forth and exchanging non-explicit photographs, Mr. Makkar agreed to meet the undercover MPD detective in Washington, D.C. Later that night, Mr. Makkar drove to the location in Washington, D.C. where he believed he would be meeting his Internet acquaintance and was arrested by MPD officers.

The events of June 14, 2006 occurred between 7:49 p.m., when Mr. Makkar and the MPD detective began chatting, and later that same night when Mr. Makkar was arrested by MPD officers in Washington, D.C. Prior to the events of June 14, 2006, Mr. Makkar had never engaged in that type of activity, and but for those four hours of aberrant behavior, he had lead the life of a well-respected, successful, and loving father and husband.

4

Mr. Makkar accepted responsibility for his actions and promptly entered in to a Plea Agreement with the Government on September 17, 2006. He realized that his conduct was wrong and pleaded guilty before this Court on September 20, 2006, as the Court is aware.

**2.    History and Characteristics of the Defendant**

In addition to the information provided above, we would ask the Court to weigh heavily the fact that Mr. Makkar has never committed a criminal offense in the past, in the United States or India. He has traveled to the United States for business four times in the past and has not committed any offenses, as the Presentence Investigation Report ("PSR") confirms. Mr. Makkar's conduct in the instant offense was an aberration and will never be repeated by him.

Mr. Makkar has submitted 17 letters of support with this Memorandum. These letters of support have been written by a variety of people, some who have known Mr. Makkar for his entire life and some by those who have only worked with him or lived near him. The recurring theme in these letters, however, is that Mr. Makkar has been an honest, truthful, hardworking, and loving father. One letter states:

> I know Tarun since his childhood. I always found him an honest innocent and hard-working person towards his studies and duties, very faithful and respectful to elders. His deeds are helpful to his colleagues and needy persons.

The letters underscore the notion that Mr. Makkar's actions on the night of June 14, 2006 were truly out of character for the Tarun Makkar that his family, friends, and coworkers knew.

Realizing his conduct, Mr. Makkar has been trying to make the most of his incarceration. During the times he has not been in solitary confinement, he has been teaching others as an instructor in math and science. We respectfully request that the Court weigh Mr. Makkar's previous history, giving nature, and assistance to the prison community heavily.

5

**B.     18 U.S.C. §§ 3553(a)(2)(A) – 3553(a)(2)(D) Factors.**

We respectfully submit that a sentence of time served and deportation based on the facts present in this case is consistent with the factors set forth in the statute.

**1.     Punishment Will Reflect Seriousness of the Offense**

First, as the Court is aware, Mr. Makkar has been incarcerated since his arrest on June 14, 2006.  For almost six months, he has had time to reflect on the seriousness of his conduct and the consequences of his actions.  Incarceration is difficult for many to endure, let alone someone with no prior contact with the criminal justice system and someone that comes from a distant country.

During Mr. Makkar's incarceration, however, he was not treated as one of the regular inmates.  He was initially housed at the Central Detention Facility ("CDF") in Washington, D.C., when on July 7, 2006, he was attacked by another inmate and suffered a contusion to his left eye.  Although Mr. Makkar did not suffer any permanent injuries, he was traumatized and immediately placed in protective custody after the unprovoked attack.  As a result, Mr. Makkar's previous counsel filed a motion to transfer Mr. Makkar to the Correctional Treatment Facility ("CTF") in Washington, D.C., and the Honorable Deborah A. Robinson signed the order moving Mr. Makkar on July 20, 2006.

As the Court is aware, Mr. Makkar's problems did not stop when he moved to CTF.  After having been there for just over two months, an anonymous note threatening harm to Mr. Makkar was found by CTF staff.  As a result, Mr. Makkar was placed in solitary confinement on September 25, 2006.  He remained in solitary confinement until October 25, 2006, when he was released back in to the general population.  Of the six months that Mr. Makkar has been incarcerated, almost six weeks of that time (more than 15 percent) has been spent in solitary

6

confinement for acts that Mr. Makkar was not responsible for. Solitary confinement is a type of punishment that is usually reserved for the most hardened criminals and problematic inmates.

Second, a criminal conviction for Mr. Makkar has had major social ramifications for Mr. Makkar's family in India. His family will live with the stigma of Mr. Makkar's guilty plea in an unforgiving and closely-knit community in India, and it will follow Mr. Makkar and his family for the rest of their lives. Their reputation has been irreparably damaged in their homeland and they will likely be ostracized from society. Undoubtedly, the instant offense has altered Mr. Makkar's life in the gravest sense. A sentence of 18 months and agreement not to return to the United States reflects the seriousness of the offense and provides more than adequate punishment for Mr. Makkar's offense.

### 2.     Need to Afford Adequate Deterrent Effect

Mr. Makkar's conviction and 18 months of incarceration will provide more than adequate deterrence to the community at large and to Mr. Makkar individually. On September 20, 2006, the United States Attorney's Office for the District of Columbia issued a press release regarding the arrest, guilty plea, and conviction of Mr. Makkar. (Attachment C) The community is aware that he was arrested and pleaded guilty to a criminal offense, and that he will be deported as a result. Furthermore, the United States Attorney's Office will issue another press release after sentencing notifying the community of this Court's sentence. Thus, a message of deterrence will be sent.

### 3.     Need to Protect the Public from Further Crimes

Mr. Makkar was never involved in any criminal conduct before and has paid a hefty price for his actions. He understands the magnitude of the offense and the harm that it can do to

7

society.  As a result, he will not be a recidivist and will ultimately leave the United States, never to return.  He does not pose a danger to the pubic in the United States or in India.

In order to assist the Court at sentencing in this matter, Mr. Makkar agreed to be evaluated by Dr. Robert K. Madsen, a clinical and forensic psychologist, and have the contents of Dr. Madsen's report disclosed to the Court.  A copy of that report as well as Dr. Madsen's curriculum vitae are attached as Attachment B.  The purpose of Dr. Madsen's evaluation was to assess whether Mr. Makkar, based on interviewing and testing related to the offense at issue on a wide-variety of sexual issues and mental health issues, possessed characteristics similar to violent sexual predators and offenders.  Further, the evaluation was critical to determine whether Mr. Makkar poses a risk to repeating the conduct or posed a danger to anyone in the community.

We respectfully submit that the report and Dr. Madsen's findings speak volumes about Mr. Makkar, including his acceptance of responsibility, true remorse, and his good nature.  More importantly, we submit that the report illustrates that he is not a danger for recidivism, that Mr. Makkar's conduct in this case was an aberration, and that he does not match the profile of a "typical offender."

Dr. Madsen spent a significant amount of time speaking to Mr. Makkar and observing his demeanor.  He noted that Mr. Makkar "did not try to dogde in any way what he is reported to have done."  Report at Page 3.  Dr. Madsen added that Mr. Makkar "showed obvious guilt (not shame) and remorse in both word and demeanor."  *Id*.  He reported that "Mr. Makkar produced a number of scores that suggest he is <u>not</u> a typical offender," since he appeared to have a total lack of violent or predatory characteristics.  That factor strongly militates against any re-offense.

In interpreting the test data, Dr. Madsen noted, "More importantly, the static variable measure that has been seen to predict offenses (Problematic History Index) fell way short of that

8

seen with offenders." Report at Page 4. Dr. Madsen reported further, "The Sex Offender Risk Appraisal Guide (SORAG), like the MSI-II scales noted above, also verified that behavioral expression of any deviance is <u>not</u> likely." Report at Page 5. Dr. Madsen concluded that the testing data for Mr. Makkar "clearly and definitively show he is virtually without any realistic risk for re-offending." *Id*.

Dr. Madsen believed that Mr. Makkar was truthful regarding his conduct during the interview and concluded that Mr. Makkar's "avowed attention to stay clear of any recurrence only bolsters the static data that suggests he would likely repeat in any case." Report at Page 6.

### IV.     Sentencing Considerations

The Presentence Investigation Report writer has calculated Mr. Makkar's Criminal History as a Category I. His base offense level is 26 after acceptance of responsibility and is reduced to 21, per the parties' agreement two-point reduction under *United States v. Smith*, 27 F.3d 649, 656 (D.C. 1994). As such, under 18 U.S.C. § 3553(a)(6) and the advisory sentencing guidelines, Mr. Makkar's sentencing range would be 37-46 months. For the reasons that follow, we respectfully request that the Court sentence Mr. Makkar to a period of 18 months and have him returned to India immediately thereafter.

Mr. Makkar is 32 years old. The instant offense represents his first and only contact with the criminal justice system. He has no one to blame but himself for his incarceration. Nevertheless, he has suffered greatly and will continue to suffer as a result of his actions. A significant consequence is that Mr. Makkar has lost his ability to earn a living and support his family.

Mr. Makkar has forever tarnished his family's reputation and good name in India by engaging in this conduct. He will be branded a felon for life. Mr. Makkar is also tasked with the

unenviable obligation to explain the wrongfulness of his conduct to his children and family, which has been devastating to him. His wife is still in disbelief about what has transpired. He has had sporadic phone contact with his daughter since his incarceration.

      Mr. Makkar has made the most of his time in prison. After Mr. Makkar was returned to the general population from isolation, he resumed tutoring in the Education Block at the Correctional Treatment Facility. He has used his time as productively as possible.

      Mr. Makkar has had a difficult time caring for his own physical health while incarcerated. As Dr. Madsen has pointed out in his report, he has experienced an Adjustment Disorder with Anxiety since his incarceration, and further incarceration will exacerbate his condition. Even the arresting officer in this case noted that when Mr. Makkar was first arrested, he had black hair, but by the time of his guilty plea before the Court, just a few months later, Mr. Makkar's hair was almost fully gray. In addition, Mr. Makkar was unable to eat for a period of time due to his depression.

      While we recognize that this is a serious offense, it should be noted that Mr. Makkar is truly remorseful for his actions. He realizes that his actions were wrong, takes full responsibility, and hopes that the Court will sentence him to 18 months of incarceration so he may return to India and resume caring for his ailing mother and family immediately thereafter.

      We respectfully submit that a sentence of 18 months is the appropriate sentence in this matter. We recognize that the Court must take into account the sentencing guidelines, which are now advisory. We would like to remind the Court that as of December 14, 2006, Mr. Makkar would have served six months of incarceration, with six weeks of that spent in solitary confinement. The time he has already spent plus the additional months will be a very long period of incarceration. To date, Mr. Makkar has done "hard-time" in a secured facility in a jail

cell with some violent offenders. He has been subject to two periods of isolation for his own security and has been assaulted by another inmate at the jail.

Some courts have found that it is appropriate to consider such pre-trial or pre-sentence detention in penal institutions as a basis for a downward departure. *See e.g. United States v. Brinton,* 139 F.3d 718, 725 (9th cir.1998), (noting that the district court granted a downward departure based on conditions of confinement but declining to decide if that was an abuse of discretion), *overruled on other grounds by United States v. Nordby,* 225 F.3d 1053 (9th Cir. 2000); *United States v. Hernandez-Santiago,* 92 F.3d 97, 101 n. 2 (2d Cir. 1996) (noting that the district court granted a downward departure of three levels based on defendant's twenty-two months incarceration in a state facility, which was a " 'harsher incarceration' "); *United States v. Navarro,* Crim. No. 93-588-14(JCL) (D.N.J. Nov. 18, 1996) (cited in *Sutton* ) (granting downward departure for pretrial conditions of confinement); *United States v. Insuasti,* Crim. No. 96-73-3(DRD) (D.N.J.) (cited in *Sutton* ) (same); *cf. United States v. Bakeas,* 987 F.Supp. 44, 50 (D.Mass. 1997) (holding that a "downward departure is called for when, as here, an unusual factor makes the conditions of confinement contemplated by the guidelines either impossible to impose or inappropriate").

In the instant case, we do not request a departure for Mr. Makkar. Rather, we ask the Court to sentence Mr. Makkar to 18 months and deport him in lieu of a greater sentence due to the extraordinary confinement conditions that he has had to endure. If the Court were to consider that Mr. Makkar has already served six months in prison and factor in that a significant portion of that time was spent in solitary confinement, the Court can reason that he will be punished severely after completing an 18-month sentence. We respectfully submit that such a sentence will promote respect for the law by adequately punishing Mr. Makkar while

recognizing the extraordinary circumstances he has endured in this matter.

### A. Appropriate Advisory Guideline Level

We would like to note that under 18 U.S.C. § 3553(a)(6), the United States Probation Office has calculated Mr. Makkar's advisory guideline sentence range at 46-57 months (using a level 23 as opposed to level 21), although we respectfully submit that it should be calculated at a level 21 which carries an advisory sentence of 37-46 months.

Mr. Makkar and the Government have agreed to a two-point reduction pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. 1994). Mr. Makkar noted his objection to the Probation Office's reading of *Smith*. While 18 U.S.C. § 3624(c) does reference a maximum of six months off the total term of imprisonment, the holding in *Smith* does not limit the Court to a six-month reduction. The intent of the *Smith* holding was to afford deportable aliens a downward departure due to the fact that they were not eligible for certain benefits that United States citizens or non-deportable aliens were, and as a result, would face more severe confinement.

The *Smith* court only held:

> Thus, although we conclude a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence, we express no opinion on whether a departure is appropriate here.

*Id* at 655-656. The only limitation referenced in the case was the six-month limitation under 18 U.S.C. § 3624(c), but that is not the only applicable statute. Given the holding in *Smith* and the advisory sentencing guidelines, Mr. Makkar respectfully requests that the Court honor the agreement reached by the Government and Mr. Makkar and reduce Mr. Makkar's ultimate guideline level to a level 21.

This guideline range, however, still does not adequately reflect Mr. Makkar's conduct, personal history, and circumstances. We respectfully submit that when the Court considers the

conduct at issue, Mr. Makkar's conditions of incarceration, psychological profile, criminal history, and his assistance to other inmates, a sentence of 18 months is more appropriate.

### V.     Conclusion

Based on the foregoing, Tarun Makkar respectfully submits that a sentence of 18 months and mandatory deportation is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

>Respectfully submitted,
>
>**SCHERTLER & ONORATO, LLP**
>
>_____/s/_____
>Habib F. Ilahi (DC Bar # 496439)
>Danny C. Onorato (DC Bar # 480043)
>601 Pennsylvania Avenue, N.W.
>North Building, 9th Floor
>Washington, D.C. 20004-2601
>Telephone: (202) 628-4199
>Facsimile: (202) 628-4177
>
>*Counsel for Defendant Tarun Makkar*

Dated: December 5, 2006

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Memorandum in Aid of Sentencing was served, via facsimile and first-class mail, postage prepaid, this 5th day of December 2006, upon the following:

    Monica Johnson
    United States Probation Officer
    333 Constitution Avenue, N.W.
    Washington, D.C.  20001
    Facsimile: (202) 273-0242

                                                        _____/s/_____
                                                           Habib F. Ilahi